# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

LOCAL 295/LOCAL 851 IBT
EMPLOYER GROUP PENSION
TRUST AND WELFARE FUNDS
AND DISTRICT NO. 9, et al.,

    Plaintiffs,

  vs.

FIFTH THIRD BANCORP, et al.,

    Defendants.

:

:

:

:

:

:

:

:

Case No. 1:08cv00421

District Judge Sandra S. Beckwith
Magistrate Judge Sharon L. Ovington

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

This case, brought in part under the Securities Act of 1933, emerged from

instability in the subprime lending market.  Plaintiffs are individuals and entities who

purchased or acquired certain stock of Defendant Fifth Third Bancorp from October 19,

2007 through June 17, 2008.  One central allegation in Plaintiffs' Amended Complaint is

that Defendants falsely represented to their stockholders that Fifth Third Bancorp did not

participate in subprime lending and used conservative underwriting and documentation

standards.  *See* Doc. #119, PageID #s 3900-3909.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

In response to Plaintiffs' requests to produce certain documents, Defendant Fifth

Third and others (*see* Doc. #143, PageID #4344 at n.1) invoked the bank examination

privilege and declined to produce over +4,500 documents, by Plaintiffs' estimate.

Plaintiffs recently filed a Motion to Compel seeking to force Defendants to produce the

purportedly privileged documents.  Plaintiffs contend, in part, that the bank examination

privilege does not apply because the Federal Reserve and state regulators – "the only

entities with actual standing to assert the [p]rivilege over the documents" – have not

asserted the privilege.  (Doc. # 143, PageID #4362).

Not surprisingly, the Federal Reserve and state (Ohio and Michigan) banking

regulators heard Plaintiffs' contention as a call to argument.  The non-party banking

regulators now seek to intervene for the limited purpose of opposing Plaintiffs' Motion to

Compel based on the bank examination privilege.[2]

## II.  DISCOVERY BACKGROUND

On December 30, 2010, Defendant Fifth Third objected Plaintiffs' First Request

for Production of Documents (requests numbers 49 and 56) "to the extent that

documents produced in connection with bank regulatory activities are privileged."  (Doc.

#143, Exhibit A at PageID #s 4407-4411).  Fifth Third provided Plaintiffs with a privilege

log, and a few weeks later a revised privilege log, documenting its application of the bank

---

[2]  The case is presently pending upon Plaintiffs' Motion to Compel (Doc. #s 143, 144), non-party banking regulators' Motions to Intervene (Doc. #s 146, 147, 156, 157), the parties' memoranda,  and the record as a whole.

examination privilege. The Board of Governors of the Federal Reserve System (the

Federal Reserve) notes that Defendant Fifth Third provided it with a copy of the letter

attached to the privilege logs, but not the privilege logs themselves. (Doc. #149, PageID

# at 5275). Similarly, Ohio and Michigan banking regulators did not receive the withheld

documents, at least as of the date they filed their Motions to Intervene. The Ohio

Superintendent of Financial Institutions notes that the Federal Reserve and state

regulators "have not yet inspected the withheld documents to determine whether any

privilege applies." (Doc. #149, PageID # 5251).

The Federal Reserve adds that, contrary to federal banking regulations, it has not

received a written administrative request directly from Plaintiffs concerning the

documents Fifth Third has not produced in this case.


**III. INTERVENTION AS OF RIGHT**

**A. Applicable Standards**

The non-party banking regulators seek to intervene as a matter of right under Fed.

R. Civ. P. 24(a).

To establish the right to intervene under Rule 24(a), non-parties must establish

four elements: "(1) that the motion to intervene was timely; (2) that they have a

substantial legal interest in the subject matter of the case; (3) that their ability to protect

that interest may be impaired in the absence of intervention; and (4) that the parties

already before the court may not adequately represent their interest." *Grutter v.*

3

*Bollinger*, 188 F.3d 394, 397-98 (6th Cir. 1999)(citing *Jansen v. City of Cincinnati*, 904

F.2d 336, 340 (6th Cir.1990)).  "'The proposed intervenor must prove each of the four

factors; failure to meet one of the criteria will require that the motion to intervene be

denied.'"  *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) (quoting *Grubbs*

*v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)); *see Blount-Hill v. Zelman*, 636 F.3d 278,

283 (6th Cir. 2011) (same).

> **B.**    **The Federal Reserve's Right To Intervene**

The Federal Reserve filed its Motion to Intervene about three weeks after Plaintiffs

filed their Motion to Compel.  If viewed as procedurally similar to a memorandum in

opposition to Plaintiffs' Motion to Compel, the Federal Reserve filed its Motion to

Intervene within the time set by S.D. Ohio Civ. R. 7.2(a)(2).  Given this, and in the

absence of any circumstances indicating tardiness or prejudice, the Federal Reserve

timely filed its Motion to Intervene.

* * *

Plaintiffs argue that the Federal Reserve should not be permitted to intervene

because it does not have a substantial legal interest in this case.  This contention lacks

merit.

The Federal Reserve has a substantial legal interest in advancing the bank

examination privilege when its application is warranted by law.  This is seen in both the

substance and purpose of the privilege.  First, the privilege:

[T]he bank examination privilege protects only agency opinions and recommendations from disclosure; purely factual material falls outside the privilege and, if relevant, must be produced. The agency asserting the privilege has the burden of establishing its applicability to the documents at issue. If the agency fails to establish the privilege with respect to the subpoenaed material, then the documents must be produced.

*Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993) (internal citations omitted); *see In re Bankers Trust Co.*, 61 F3d 465, 471-72 (6th Cir. 1995).

Because the burden of establishing the bank examination privilege falls on the Federal Reserve, it holds a substantial legal interest in determining – before potentially confidential documents are produced – whether it must advance the privilege. *Bankers Trust* bolsters this through the specificity of its remand instructions:

[W]e note that the district court on remand must provide the Federal Reserve with notice and allow the Federal Reserve the opportunity to intervene. The bank examination privilege belongs to the Federal Reserve, and therefore, where a claim of the privilege is appropriate, the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion.

*Bankers Trust*, 61 F.3d at 472. The substantial nature of the Federal Reserve's legal interest is underscored by the bank examination privilege's purpose – "to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions." *Bankers Trust*, 61 F.3d at 471.

Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency. . . . Because bank supervision is relatively informal and more or less

5

continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Bankers Trust*, 61 F.3d at 471 (quoting *In re Subpoena Served upon the Comptroller of the Currency, and the Secretary of the Bd. of Governors of the Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992)(other citation omitted).

Both the substance and purpose of the bank examination privilege, as well as the Federal Reserve's goal of stabilizing and building the national economy,[3] the Federal Reserve has established its substantial legal interest determining whether the bank examination privilege applies before any of the requested documents are produced.

Plaintiffs argue that the Federal Reserve's interest in the withheld documents is merely hypothetical, not substantial, because the Federal Reserve has yet to see and evaluate the withheld documents. This contention misses the mark. The Federal Reserve's substantial and actual – not hypothetical – interest does not derive from the possibility that the bank examination privilege might or might not apply to any particular document. The Federal Reserve's substantial interest derives from the authority to ascertain – in the first instance – whether or not to apply the privilege. Even if the Federal Reserve ultimately determines not to advance the privilege in this case, the

---

[3] *E.g., Texas State Bank v. United States*, 423 F.3d 1370, 1372 (Fed. Cir. 2005) ("A principal function of the Federal Reserve System has been to determine and implement monetary policy 'so as to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates.'" (quoting, in part, 12 U.S.C. § 225a)).

possibility does not diminish (or render hypothetical) the Federal Reserve's substantial and actual interest in protecting its ability to assert the privilege, if and when it becomes necessary.

\* \* \*

The Federal Reserve's right to intervene turns next on whether its absence from the case impairs its ability to protect its interest the bank examination privilege. To establish an impairment in its ability to protect its interest, the Federal Reserve must only show "that there is a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400 (italics in original). The potential exists in this case because the "bank examination privilege belongs to the Federal Reserve." *Bankers Trust*, 61 F.3d at 472. The Federal Reserve's absence from the case would potentially, if not actually, eliminate adversarial testing of whether the privilege applies to any of 4,500-plus withheld documents. Indeed, Plaintiffs' Motion to Compel seeks that very result by arguing that the privilege belongs to the Federal Reserve and that Defendants may not assert it to avoid producing the withheld documents. *See* Doc. #143, PageID#s 4359-4361. Similarly, Plaintiffs contend in their Motion to Compel that federal regulations do not prohibit Defendants from producing the requested documents. If so, no meaningful adversarial testing of the privilege will occur unless the Federal Reserve is given an opportunity to intervene.

Lastly, as to the parties already before the court, Defendants lack the ability to adequately represent the Federal Reserve's interest because Plaintiffs assert that the bank examination privilege belongs to the Federal Reserve. If so, the privilege would drop

from the case and the Federal Reserve's interest in the privilege would be unprotected.

* * *

Accordingly, the Federal Reserve has established its right to intervene under Fed. R. Civ. P. 24(a) in this case for the limited purpose of determining whether to litigate the bank examination privilege as to the 4,500-plus withheld documents.

### C.    State Banking Regulators' Respective Right To Intervene

The Ohio Superintendent of Financial Institutions (OSFI) and the Michigan Office of Financial Insurance (MOFI) each seeks to intervene for largely the reasons and limited purpose as the Federal Reserve.

Reviewing the state banking regulators' respective Motions and Memoranda and Plaintiffs' Memoranda in Opposition reveals that their arguments are not significantly different from those raised in relation to the Federal Reserve's Motion to Intervene. Consequently, the reasons previously discussed concerning the Federal Reserve's right to intervene under Rule 24(a) apply to the state regulators' Motions and will not be repeated in depth.

Beginning with timeliness, OSFI filed its Motion to Intervene about three weeks after Plaintiffs filed their Motion to Compel. Its Motion was therefore timely filed. MOFI filed its Motion to Intervene about four weeks later, but before briefing was complete on OSFI's Motion to Intervene. MOFI's Motion thus caused no significant delay and was therefore timely.

As to the remaining Rule 24(a) criteria, for the reasons set forth above, *supra*, §III(B), OSFI and MOFI have each established that it has a substantial legal interest in the bank examination privilege; its ability to protect that interest may be impaired in the absence of intervention; and the parties already before the court may not adequately represent OFSI's or MOFI's interest.

Accordingly, OSFI and MOFI have each established its right to intervene under Fed. R. Civ. P. 24(a) in this case for the limited purpose of determining whether to litigate the bank examination privilege as to the 4,500-plus withheld documents.

### D.      Remaining Issues

Plaintiffs maintain that even if the banking regulators are permitted to intervene, the regulators have not shown that the bank examination privilege applies.  This argument, however, is premature because neither the Federal Reserve nor the state regulators have yet to review the documents to ascertain whether to apply the privilege to any of the documents.

Along a different line, the Federal Reserve contends that Plaintiffs' Motion to Compel is premature because they have not exhausted their administrative remedies as required by banking regulations.  The Federal Reserve thus asks the Court, based on *Bankers Trust*, to deny Plaintiffs' Motion to Compel.  The Federal Reserve suggests that Plaintiffs could then file a written document request with the Federal Reserve's general counsel, and "[t]he Board will work with the parties, the Court, and the States of Ohio and

Michigan, to establish a workable time frame for the action on the request." (Doc. #149, PageID at #5284). The Federal Reserve explains that if the regulators do not assert the bank examination privilege, the Court will not need to take further action. If the regulators assert the privilege to withhold documents, the Court could review whether the privilege applies.

The Federal Reserve's regulations mandate: "Any person . . . seeking access to confidential supervisory information. . . , whether by deposition or otherwise, for use in litigation before a court. . . , shall file a written request with the General Counsel of the Board. . . ." 12 C.F.R. §261.22(b)(1). By its plain language, this regulatory mandate serves a significant notice function by, in essence, requiring parties in litigation to alert the Federal Reserve of their interest in discovering potentially privileged information or documents. *Cf. Bankers Trust*, 61 F.3d at 470, n.6 ("we think it advisable if not necessary for a party in litigation that possesses 'confidential supervisory information' to inform the Federal Reserve of any requests for production so the Federal Reserve will have notice and the opportunity to intervene and protect any interests, arguments, or concerns."). It is, moreover, an irrefutable generality that "[a]t bottom, federal regulations should be adhered to and given full force and effect of law whenever possible." *Bankers Trust*, 61 F.3d at 469 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

In light of *Bankers Trust* and *Chevron*, strict adherence to 12 C.F.R. §261.22(b)(1) would often seem warranted when a party seeks financial-examination documents held by

the Federal Reserve. The present case, however, is atypical. The Federal Reserve has

received actual notice of Plaintiffs' discovery requests and has sought to intervene for the

limited purpose of litigating the bank examination privilege. Because its Motion to

Intervene is well taken, *supra*, §III(B), the Federal Reserve is in the position where it can

advance the privilege in this case and litigate its interest in shielding any purportedly

confidential documents or information. The Federal Reserve, in essence, has been

provided with the actual notice §261.22(b)(1) requires. And, as in *Bankers Trust*, there is

"no compelling reason to discard relatively straightforward methods outlined in the

Federal Rules of Civil Procedure simply because the Federal Reserve has attempted to

mandate a different procedure." 61 F.3d at 470-71.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Federal Reserve Board's Motion to Intervene (Doc. #146) be GRANTED; the Motion of the Ohio Superintendent of Financial Institutions to Intervene for Limited Purposes (Doc. #147) be GRANTED; and the Michigan Office of Financial Insurance Regulation's Motion to Intervene (Doc. #156) be GRANTED;

2. The Federal Reserve Board, the Ohio Department of Financial Institutions, and the Michigan Office of Financial Insurance Regulation be permitted to intervene as of right under Fed. R. Civ. P. 24(a) for the limited purpose of litigating, if necessary, the bank examination privilege;

3. Plaintiffs' Motion to Compel (Doc. #143) be DENIED without prejudice to renewal in the event the Federal Reserve or the state banking regulators advance the bank examination privilege concerning the approximately 4,500 withheld documents currently at issue; and

4. The parties shall meet and confer and file a proposed plan, **by February 21, 2012**, addressing, at a minimum, (i) the time frame in which the banking

regulators will complete their document reviews, and (ii) the deadline by which the banking regulators will produce responsive documents and/or provide Plaintiffs with a privilege log (if necessary).


February 2, 2012

                                         s/Sharon L. Ovington
                                         Sharon L. Ovington
                                 United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).