**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| The Eshe Fund, individually, and on behalf of All Those Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Fifth Third Bancorp, *et al.*, <br><br> Defendants. | Case No. 1:08-cv-421 <br><br> (Judge Sandra S. Beckwith) <br> (Magistrate Judge Sharon L. Ovington) |

**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiff Edwin B. Shelton ("Lead Plaintiff") and the Class in the above-captioned action (the "Action") submit this motion for final approval of the Settlement of this class action for $16,000,000.00 in cash and approval of the Plan of Allocation of Settlement proceeds. The terms and conditions of the Settlement are set forth in the Stipulation of Settlement dated April 16, 2013 (the "Stipulation"), which was previously filed with the Court.[1] *See* Dkt. No. 205-2. The Stipulation resolves Lead Plaintiff's and the Class's claims against all Defendants. The issue before the Court is straightforward: namely, whether the settlement and Plan of Allocation are fair, reasonable, and adequate and should be approved by the Court.

Lead Plaintiff and Co-Lead Counsel firmly believe the Settlement is a highly favorable resolution of this Action and by any measure is fair, reasonable, and adequate. The Settlement, which is for $16,000,000.00 in cash, is the result of arduous and complex settlement negotiations with the substantial assistance of the Honorable Daniel J. Weinstein. But for Lead Plaintiff and Co-Lead Counsel stepping forward to prosecute this Action on behalf of the Class, the Class may have recovered nothing.

The Settlement was reached only after Co-Lead Counsel: (a) conducted an extensive investigation into the underlying facts; (b) thoroughly researched the law pertinent to the Class Members' claims and Defendants' defenses; (c) prepared and filed a detailed Amended Class Action Complaint specifying Defendants' violations of the federal securities laws (the "Complaint"); (d) successfully opposed Defendants' motion to dismiss the Complaint; (e)

---

[1] All capitalized terms that are not defined herein shall have the same meanings as set forth in the Stipulation.

conducted extensive fact discovery, including the review of approximately 1.9 million pages of documents; (f) prepared and appeared for the depositions of Lead Plaintiff and Plaintiffs Jeffrey Wacksman and The Eshe Fund, by Henry Stevens; (g) engaged in extensive litigation concerning Plaintiffs' Motion to Compel Production of Documents withheld on the basis of the Bank Examination privilege; (h) researched and briefed Plaintiffs' Motion for Class Certification; (i) prepared multiple in-depth mediation statements that analyzed the merits of Lead Plaintiff's claims and the defenses available to Defendants; (j) took depositions of Fifth Third employees; and (k) consulted with economic experts to fully evaluate the strength of Lead Plaintiff's claims and Defendants' defenses.  A settlement was reached at a time when Lead Plaintiff and Co-Lead Counsel were fully cognizant of the strengths and weaknesses of the case, the risks of continued litigation, and the propriety of settlement.[2]

As discussed herein and in the Joint Declaration, Lead Plaintiff faced significant risks in obtaining a more favorable outcome after continued litigation.  For example, Lead Plaintiff was faced with the formidable task of proving that there were material omissions in the registration statements, prospectuses, or proxy statements, the comprehensive disclosures made by Fifth Third were not accurate as of the time they were made, and that the losses in stock value were a direct and proximate result of those misrepresentations or omissions by Fifth Third.  If the Court or a jury accepted any of Defendants' arguments at trial, it would have severely reduced or eliminated the Class's damages.  In short, Lead Plaintiff faced numerous obstacles in proving

---

[2] For a more detailed history of the litigation and the factors bearing on the reasonableness of the Settlement, Plan of Allocation, and award of attorneys' fees and expenses, the Court is respectfully referred to the accompanying Joint Declaration of Jack Reise and Sherrie R. Savett in Support of Motions for Final Approval of Proposed Class Action Settlement, Award of Attorneys' Fees and Reimbursement of Expenses, Plan of Allocation and Award to Plaintiffs ("Joint Dec." or "Joint Declaration").

2

both liability and damages. There was no certainty, given Defendants' asserted defenses, that Lead Plaintiff and the Class would prevail on either liability or damages.

Co-Lead Counsel, who are well-respected and experienced in prosecuting securities class actions, have concluded that the Settlement is a very good result under the circumstances and is clearly in the best interest of the Class. This conclusion is based on all the circumstances present here, a complete analysis of the evidence, the substantial risks, expense, and uncertainties in continuing the litigation, the relative strengths and weaknesses of the claims and defenses asserted, the legal and factual issues presented, and past experience in litigating complex actions similar to the present Action. Moreover, the Plan of Allocation of the settlement proceeds, which tracks Lead Plaintiff's theory of damages, is necessarily fair, reasonable, and adequate.

Members of the Class appear to agree with Co-Lead Counsel's conclusion. Submitted concurrently herewith is the Affidavit of Heffler Claims Group ("Heffler Aff."), the Clams Administrator in this Action. Pursuant to the Court's preliminary approval Order, a Notice of Proposed Settlement of Class Action (the "Notice") was mailed to 168,304 potential Class Members and nominees. Heffler Aff. at ¶11. Additionally, the Summary Notice was published in *Investor's Business Daily* and *Business Wire* on July 22, 2013. *Id.* at ¶14. The Notice apprised Class Members of their right to, and procedure for, objecting to the Settlement, the Plan of Allocation, or to Co-Lead Counsel's application for attorneys' fees and expenses. The time to file objections will expire on September 20, 2013. To date, no objections to any aspect of the Settlement, the Plan of Allocation, or Co-Lead Counsel's request for attorneys' fees and expenses have been received. The overwhelming acceptance of the Settlement by the Class fully supports a finding that the Settlement and Plan of Allocation are fair, reasonable, and adequate with respect to the Class and should be approved.

## II.     FINAL CERTIFICATION OF THE CLASS IS APPROPRIATE

As set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Settlement, class certification is appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure.  All of the prerequisites for certification have been met and, as of the date of this submission, there have been no requests for exclusions from the Class.  Under similar circumstances, numerous courts have granted final class certification. *See Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 168 (N.D. Ill. 2009) (certifying securities fraud class action); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 594 (N.D. Ill. 2009) (same).  This Court's June 19, 2013 Order granting preliminary class certification pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, should now be made final.

A necessary part of the settlement process for class actions is the certification of the class before or at the time the settlement is approved by the court.  It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged securities fraud. *See*, *e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[Lead] [P]laintiffs to pool claims which would be uneconomical to litigate individually . . . [M]ost of the [Lead P]laintiffs would have no realistic day in court if a class action were not available").  Accordingly, "[i]n a securities fraud action, any error, if there is one, should be committed in favor of allowing a class action." [3] *In re Gen. Instrument Corp. Sec. Litig.*, No. 96 C 1129, 1999 U.S. Dist. LEXIS 18182, at *14 (N.D. Ill. Nov. 18, 1999).

---

[3]     Citations, internal quotations, and footnotes are omitted and emphasis is added unless otherwise noted.

### III. LEGAL STANDARDS FOR APPROVAL OF CLASS ACTION SETTLEMENTS

The law favors the settlement of class action litigation. *See UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. GMC*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); and *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988) ("case law favors the voluntary settlement of class actions."), *aff'd sub nom. Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989). Judicial approval of class action settlements is intended to insure that the rights of absent class members are adequately protected. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997). Although Rule 23(e) is silent as to the standard courts should apply to approve or disapprove a proposed settlement, the standard developed by the courts is to determine "whether the proposed settlement is fair, adequate, and reasonable under the circumstances, as well as consistent with public interests, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than if pursued to a verdict by a jury." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

A proposed class action settlement enjoys a strong presumption that it is fair, reasonable, and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well experienced in class action litigation arising under the federal securities laws. *See, e.g., New York v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 680-81 (S.D.N.Y. 1991). Moreover, under the PSLRA, a settlement reached under the supervision of an appropriately selected lead plaintiff is entitled to an even greater presumption of reasonableness.

In approving a proposed settlement of a class action in this Circuit, a court must find that the proposed settlement is both fair and adequate. *UAW*, 497 F.3d at 631 ("Before approving a

5

settlement, the district court must conclude that it is fair, reasonable, and adequate."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) ("[i]n deciding whether to grant final approval of the Proposed Settlement, this Court must determine, after holding a fairness hearing, whether the settlement is fair, adequate, and reasonable").

The pertinent criteria for evaluating the fairness and adequacy of a proposed class action settlement in this Circuit include the following factors: (a) the plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections raised by the class members; and (g) the public interest. *See UAW,* 497 F.3d at 631; *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983); *Robinson v. Ford Motor Co.*, No. 1:04-CV-00844, 2005 U.S. Dist. LEXIS 11673 (S.D. Ohio June 15, 2005).

In assessing the fairness and adequacy of a settlement for final approval, whether the settlement has been preliminarily approved by the court "gives rise to a presumption that the settlement is fair, reasonable and adequate" *Fussell v. Wilkinson*, No. 1:03-CV-704, 2005 U.S. Dist. LEXIS 30984, at *8 (S.D. Ohio Nov. 22, 2005). Courts have recognized that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991). Therefore, the court should not "turn the settlement hearing into a trial or a rehearsal of the trial nor need it reach any dispositive conclusions on the admittedly unsettled legal issues in the case." *Flinn v. FMC Corp.*, 528 F. Supp. 1169, 1172-73 (4th Cir. 1975); *see also UAW,* 497 F.3d at 631 (the determination of fairness does not require the court to "decide the merits of the case or resolve unsettled legal

6

questions"). In this context, in evaluating the terms of a proposed settlement, courts have looked first to the fairness of the settlement negotiations and the views of counsel. It is well settled that, in approving a class action settlement, the court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs," that that "the interests of counsel and the named plaintiffs are not unjustifiably advanced at the expense of unnamed class members," and that the settlement was "the product of arm's-length bargaining." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-1119, 2011 U.S. Dist. LEXIS 7829, at *13 (S.D. Ohio Jan. 25, 2011).

This Court preliminarily approved the Settlement by its Order dated June 19, 2013, preliminarily finding that the requirements of Rule 23 have been satisfied. No facts have emerged since the Court preliminarily certified this Settlement Class that would warrant further inquiry. In fact, since the dissemination of the Court-ordered notices, no purported Class Members have requested exclusion from the Class. Heffler Aff. ¶15. This Court can properly confirm those findings by finally ruling that the requirements of Rule 23 have been satisfied.

### IV. THE PROPOSED SETTLEMENT MEETS THE SIXTH CIRCUIT'S STANDARDS FOR APPROVAL

As set forth in detail below, the settlement before the Court meets each of the prongs of the fairness and adequacy standards.

#### A. Lead Plaintiff's Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in Settlement

In the absence of a settlement, Lead Plaintiff faced a significant risk that Defendants would continue to maintain a number of legal and factual defenses, as they did in their Motion to Dismiss, that could limit or eliminate a future litigated recovery, including that the alleged misrepresentations and omissions were not materially misleading to investors and that Lead

7

Plaintiff cannot establish loss causation or damages. Among other arguments, Defendants' primary defenses were that: (1) there were no material omissions in the registration statements, prospectuses, or proxy statements, and the comprehensive disclosures made by Fifth Third were accurate as of the time they were made; and (2) any losses in stock value were either recouped in the months following the June 18, 2008 announcement or were attributable to historically unfavorable market conditions, rather than any alleged misrepresentation or omission by Fifth Third.

Although Lead Plaintiff believes he could counter all of these arguments with expert testimony and survive a motion for summary judgment and prevail at trial, battles between experts are notoriously difficult to assess. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. N.J. 2001) (approving settlement at an early stage of litigation that was headed for resolution as a battle of the experts); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 373 (S.D. Ohio 2006) ("The Settlement agreement reached by the parties avoids the risks attendant to [a] battle of the experts, which could result in a ruling against Plaintiffs."). There was a risk that Defendants' evidence and experts could be credited by the Court or a jury, resulting in a recovery that would be less than that achieved by the Settlement or no recovery at all. The Settlement avoids all of the inherent risks that the Class could recover less, or nothing at all, from Defendants if the litigation were to continue. Therefore, careful consideration of the above supports approval of the Settlement.

### B.    The Complexity, Expense, and Likely Duration of the Litigation

Securities class actions are extremely complex, time consuming, and expensive. *See, In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, No. 2:03-md-1565, 2009 U.S. Dist. LEXIS 45790, at *20-*21 (S.D. Ohio May 27, 2009). Courts have repeatedly noted that "[s]tockholder

litigation is notably difficult and notoriously uncertain." *Ratner v. Bennett*, No. 92-4701, 1996 U.S. Dist. LEXIS 6259, at *15 (E.D. Pa. May 8, 1996); *New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ("securities class actions are often difficult and . . . uncertain"); *Nat'l Century*, 2009 U.S. Dist. LEXIS 45790, at *21. Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted).

There is no question that this case presented complicated factual and legal issues. Defendants have demonstrated a commitment to defend this case through and beyond trial, if necessary, and are represented by well-respected and highly capable counsel. If not for this Settlement, the case would have continued to be fiercely contested by all parties. The expense and time of continuing litigation would have been substantial. As the court noted in *Ikon*, which is applicable here:

> In the absence of a settlement, this matter will likely extend for months or even years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trail through numerous public and private documents.

194 F.R.D. at 179.

Discovery in this case had not yet been completed such that substantial time and expense would need to be expended in gathering and reviewing additional document productions, preparing for numerous fact and expert depositions, exchanging various expert reports,

9

conducting third party discovery, briefing summary judgment, and ultimately preparing the case for trial.  The trial itself would have been expensive, uncertain, and no matter the outcome, appeals would be virtually assured.  This would add considerably to the expense and duration of the litigation.  The legal issues are equally as complex, several of which require expert testimony, as discussed above.  There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation.  Many hours of the District Court's time and resources will also have been spared.  Moreover, even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, which would further reduce its value.  The $16,000,000.00 Settlement, at this juncture, results in a certain and substantial tangible recovery, without the considerable risk, expense, and delay of trial and post-trial litigation.  *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.  It is especially likely to be worth more to the members of the class in this litigation.").

A prolonged period of additional pre-trial proceedings and a lengthy and uncertain trial would not serve the interests of the Class in light of the substantial monetary benefits provided by the Settlement when weighed against the likelihood of a larger recovery years down the road after continued litigation.  Thus, the prospect of continued protracted, expensive, and uncertain litigation strongly supports approval of the Settlement.

        **C.**    **The Stage of the Proceedings and the Amount of Discovery Completed**

There is no minimum amount of discovery that must be undertaken to satisfy this factor.  Indeed, formal discovery might not be necessary for the parties to fully evaluate the merits of their claims.  *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556-57 (S.D. Ohio 2000).

10

At the time the parties considered the possibility of settlement, Lead Plaintiff, through Co-Lead counsel, had conducted an extensive investigation of the claims asserted in the Action that began before the filing of the Complaint and continued thereafter; reviewed all relevant public information, including Fifth Third's SEC filings, securities analysts' reports, public statements by Defendants, media reports about Defendants, and trading data; spent a significant amount of time and effort identifying and interviewing confidential witnesses, including twelve Confidential Witnesses cited in the Complaint (¶¶289-342); reviewed and analyzed approximately two million pages of documents produced by Defendants and took four Rule 30(b)(6) depositions of Fifth Third employees; and consulted with experts, including those with extensive experience in banking and Federal Reserve regulations and procedures, as well as an expert in loss causation issues and damages. Joint Dec. at ¶¶22, 34, 35. The evidence developed was sufficient for Co-Lead counsel to evaluate Defendants' settlement offer at mediation and make an informed decision about settlement. *See Levell*, 191 F.R.D. at 556-57 (approving settlement where record contained little evidence of formal discovery having taken place, but where class counsel had "retained experts and engaged in substantial informal discovery prior to the negotiation of the proposed Settlement Agreement.").

### D. The Judgment of Experienced Trial Counsel

This case has been litigated and settled by experienced and competent counsel on both sides of the case. Co-Lead Counsel are well known for their experience and success in complex class action litigation. Joint Dec. at ¶¶64, 65. Defense counsel also have an abundance of experience in this type of litigation. In reaching their decision to enter into the settlement, Co-Lead Counsel considered, among other things: (a) the substantial immediate benefit to Class Members under the terms of the Stipulation; (b) the expense of completing fact and expert discovery; (c) the risk that the Court would deny class certification, or if it were granted,

11

Defendants would file a Rule 23(f) appeal; (d) the probability that Defendants would move for summary judgment at the close of discovery, leading to a battle of the experts with respect to materiality, damages and loss causation issues; (e) the risk of prevailing through summary judgment and/or trial; (f) the risks of presenting a complex, fact-intensive case to a jury; and (g) the risks and delays inherent in such litigation, including interlocutory appeals or appeal after judgment. Joint Dec. ¶48. The recommendations of experienced and qualified counsel favor approval of the settlement.

### E. The Nature of the Negotiations

The settlement negotiations were hard fought and took place at arm's length. The parties initially met before the Honorable Daniel J. Weinstein on June 28, 2011 but were unable to reach an agreement. Following additional discovery, including four Rule 30(b)(6) depositions of Fifth Third employees, extensive negotiations, a motion to compel a substantial volume of documents withheld based on the bank examination privilege, fully briefing class certification, and depositions of proposed Class representatives, the parties agreed to participate in another mediation session before Judge Weinstein on December 10, 2012 in New York City. Prior to attending each mediation, the parties exchanged mediation briefs, and Lead Plaintiff examined, among other things, the likelihood of success on the merits and the maximum provable damages, assuming success on all claims. Following two full in-person negotiations at this mediation, the parties reached an agreement-in-principle to settle the case. Joint Dec. at ¶45.

### F. The Objections Raised by the Class Members

The attitude of class members, as either expressed or by failure to object after notice of the settlement, is a factor to be considered by the Court. *Connectivity Sys.*, 2011 U.S. Dist. LEXIS 7829, at *16. In this case, notices of settlement were sent to 6,358 Fifth Third shareholders whose names were obtained from Defendants' records, along with 161,946

12

nominees and brokers whose names are maintained by the Claims Administrator. In addition, a Summary Notice was published in the national edition of *Investor's Business Daily* and *Business Wire* on July 22, 1013.[4] Joint Dec. at ¶50.

The time period for objecting to the settlement expires on September 20, 2013. As of the date of this filing, Co-Lead Counsel have received no written objections to the Settlement and no requests for exclusion from the Class.[5]

### G. The Public Interest

The public interest favors approval of the Settlement, as there is "certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve." *Connectivity Sys..*, 2011 U.S. Dist. LEXIS 7829, at *19. In the instant case, the Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources. *Telectronics*, 137 F. Supp. 2d at 1025; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990).

## V. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

The Plan of Allocation establishes the method by which the Net Settlement Fund will be distributed to Class Members submitting acceptable Proof of Claim forms. The Plan of Allocation was set forth in the Notice mailed to Class Members and will distribute the Settlement proceeds to those Class Members who suffered damages as a result of the alleged fraud. Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standard of review applicable to the

---

[4] *See* paragraphs 2 through 13 to the Heffler Aff. regarding the mailing of the Notice of Proposed Settlement of Class Action and publication of the Summary Notice.

[5] Should any timely objections be received, Co-Lead Counsel will address them in a reply memorandum to be filed no later than October 14, 2013.

settlement as a whole: the plan must be fair and adequate. *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-10952, 2011 U.S. Dist. LEXIS 150427, at *65 (E.D. Mich. Dec. 13, 2011). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

"As a part of its exacting and thorough examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010), *aff'd sub nom. Popular Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). The goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. In order to develop a fair distribution plan, Co-Lead Counsel, in conjunction with Heffler Claims Group, developed the Plan of Allocation that will result in a fair distribution of the available settlement proceeds based on Lead Plaintiff's theory of damages. Co-Lead Counsel believes that the Plan of Allocation will equitably apportion the net settlement proceeds among all eligible Class Members. Joint Dec. ¶¶52-59. As a result, and given the lack of any objections from absent Class Members, the Plan of Allocation should be approved.

## VI. CONCLUSION

This Settlement is a highly favorable result for the Class, particularly given the presence of skilled counsel for all parties, the complexity of the facts and law at issue, the additional substantial expense if this Action were to continue, the risks attendant to continued litigation, the sizable present benefit of the Settlement, and the arm's-length negotiations. Therefore, for the reasons discussed herein and in the Joint Declaration, Lead Plaintiff respectfully requests this

Court approve the Settlement of this Action and the Plan of Allocation of Settlement proceeds as fair, reasonable, and adequate.

DATED:  September 6, 2013    **CUMMINS & BROWN LLC**

　　　　　　　　　　　　　　　　　　　　*/s/ Phyllis E. Brown*
　　　　　　　　　　　　　　　　　　　　Phyllis E. Brown

Scripps Center
312 Walnut Street, Suite 1000
Cincinnati, Ohio  45202
Phone:  (513) 241-6400
Fax:  (513) 241-6464
E-mail:  pbrown@cumminsbrownlaw.com

*Liaison Counsel for Lead Plaintiff and the Class*

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett
Barbara A. Podell
Phyllis M. Parker
1622 Locust Street
Philadelphia, Pennsylvania  19103
Phone: (215) 875-3000
Fax:  (215) 875-4604
E-mail:  ssavett@bm.net
E-mail:  bpodell@bm.net
E-mail:  pparker@bm.net

**ROBBINS GELLER RUDMAN & DOWD LLP**
Jack Reise
Stephen R. Astley
Elizabeth A. Shonson
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida  33432-4809
Phone:  (561) 750-3000
Fax:  (561) 750-3364
E-mail:  jreise@rgrdlaw.com
E-mail:  sastley@rgrdlaw.com
E-mail:  eshonson@rgrdlaw.com

*Co-Lead Counsel for Lead Plaintiff  and the Class*

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
Daniel W. Krasner
Robert B. Weintraub
270 Madison Avenue
New York, New York 10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653
E-mail:  krasner@whafh.com
E-mail:  weintraub@whafh.com

**COHEN, TODD, KITE & STANFORD, LLC**
Michael R. Schmidt, Ohio Atty. No. (0022999)
Donald J. Rafferty, Ohio Atty. No. (0042614)
250 East Fifth Street, Suite 2350
Cincinnati, Ohio 45202
Phone:  (513) 421-4020
Fax:  (513) 241-4490
E-mail:  mschmidt@ctks.com
E-mail:  drafferty@ctks.com

*Co-counsel for Leon H. Loewenstine*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2013, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Phyllis E. Brown*
Phyllis E. Brown
